## Tumey vs. Knox.

Case 11.

Error to the Mercer Circuit; WM. L. KELLY, Judge:

Evidence. Physicians. Res gesta. Slaves. Witnesses.
Warranty.

April 21.

Action for breach of the covenant of warranty of the soundness of a slave.

Chief Justice BIBB delivered the opinion of the Court.

On the 17th of July, 1822, Tumey sold a negro man slave to Knox, and made a bill of sale, containing a warranty, that the slave was sound, well and healthy. Shortly after the 18th October, 1822, the slave died; Knox sued on the covenant of warranty.

Declarations of the slave and the defendants,vendor, made whilst the slave was in his possession, given in evidence to prove his disease.

On the trial the plaintiff, to support the covenant of unsoundness, and breach of the warranty, introduced Mr. Durham, who occasionally bled in the neighborhood, and he was permitted, to detail what Mr M'Ginnis, a former owner of the slave, had stated, about one or two years before the death of the slave, and also detail what the slave himself had stated, at the same time, to Mr. Durham, who had been sent for to bleed the negro then in bed; M'Ginnis stated, the negro had a cholic, and he was afraid he would die. What the negro stated as to his illness is not set forth, to this evidence, of what Mr. M'Ginnis had stated to Durham, and of what the negro stated to him, in relation to his illness, the defendant objected, but his objection was overruled.

Slaves statement to his physician.

The court also permitted Doctor Fleece, a witness for the plaintiff, to detail what the negro had told the Doctor, in relation to his complaint, when called to visit him about the 18th October, in his last illness, notwithstanding the objection of the defendant.

Opinion of the Chief Justice against the competency of the former owner

The Chief Justice, is of opinion, that if M'Ginnis knew any thing material to the cause of action, he ought to have been produced and examined as as a witness. By what rule of evidence the declaration of M'Ginnis made to Durham, some twelve or twenty months before Tumey's sale to Knox, are to be imposed upon Tumey, is not perceived.

The general rule is, that the mere recital of a fact, the mere oral assertion by an individual, that a par-

ticular fact is true, cannot be received as evidence against another person, who is a stranger, not party, nor privy, not bound by the act of the individual who makes the assertion. It falls under the denomination of hearsay, which, as a general rule, is not evidence.

The counsel, however, have argued for the plaintiff, that what M'Ginnis said, and what the negro said to Durham, who they say was *quasi* physician, (a kind neighbor, whose occupation or business is that of a farmer, is made a physician "*quoad hoc*,") is to be taken as part of the *res gestæ*, and received like the attendant's and patient's declaration to a physician, as to the symptons of the disease. The physician may be assisted by the attendant and patient to ascertain the disease; but at last the credit is given to the physician's skill and judgment, in pronouncing upon the symptoms compared with the declarations of the patient and attendants. The cases of that description have stretched the rule of evidence as far, and perhaps a little farther, than it will well bear. But to convert Mr. Durham into a physician, would be contrary to the evidence.

Before we give into the effect of the term *res gestæ*, as used in this case, we must look into its meaning. *Res gesæt*, means a fact done, or transaction, or thing past. Before we admit declarations as part of the *res gestæ*, it is necessary to show the relation and connexion of the fact, with the controversy. If the fact itself, which is the principal, has no tendency to illustrate the question of dispute between the parties, if the principal fact is not evidence, the declarations relating to that fact, as part of the *res gestæ*, cannot be admitted as evidence.

The declarations of the bankrupt, where the intent with which he left his house, enters into the character of the act itself, which is in dispute, so as to determine the question of bankruptcy or not; the cry of the mob in Lord George Gordon's case; the entry made in the book, in the case of Digby vs. Stedman, and Lord Torrington's case, 1 Salk. 285, are examples of declarations or entries, admitted as part of the *res gestæ*, as facts connected with, and

VOL. VII. M

*Margin notes:*

TUMEY vs. KNOX.

Chief Justice against the declarations of the slave.

Definition of the *res gestæ* and where evidence.

forming a part of the transaction under investigation. So the declarations of tenants, as to who was the landlord under whom they entered, or under what title they entered, or the declaration of a person making an entry, as to the deed, claim or title, under which he made the entry, are admitted as part of the *res gestœ*, to explain the nature of the possession, whether hostile or amicable, or the extent of that possession.

All these declarations are admitted as part of the transaction, as tending to elucidate the facts with which they are connected, as the facts themselves are proper evidence as to the matters in dispute.

Parties and privies.

It must be likewise remembered, that to bind a man by the acts or declarations of another, he must be party or privy to the act or declaration of that other, it becomes evidence against him, by his own conduct or assent, presumed from the relation, or connection he has assented to have with that other. But where he is entirely a stranger to the acts or declarations of another, those cannot affect him, because they afford no presumption or inference against him, as founded on his own conduct or admission. *Res inter alios acta* is not evidence, it affords no presumption against him in the way of admission or otherwise. And it falls under the general rule, that no man can be bound by the acts, or concluded by the declarations of others, or by their assertions, to which he was in no wise privy. So to bind him is, *in the general*, contrary to the first principles of justice, in violation of the fundamental principle of evidence, that it is to be verified and sanctioned by the oath of the witness or declarant. Exceptions to these fundamental principles must be received with great caution. The exceptions to these rules are such, as to guard against abuse, by resting the credit of the declaration or assertion, not upon the credit of the individual who makes it, but upon its connection with circumstances, which from experience in the affairs of men, may be relied on as free from danger, and are commixed moreover with considerations of public utility and necessity.

All these exceptions, by which declarations not upon oath, are admitted in place of declarations upon oath, are received, however, upon the supposition, that the declarants, were worthy of credit if alive, or under no objections as to competency; that they are acknowledged by the law as witnesses against the body of society, capable of historical truth, witnesses as to the general current of events, depositaries of facts, to be believed in tradition and and matters of reputation, although not always competent witnesses, as to the very point in issue.

<div style="float:right">TUMEY vs. KNOX.

Where declarations not on oath may be evidence.</div>

Slaves are not witnesses by our laws against the body of society; they are witnesses only against, or for negroes or mulattoes. To receive the declaration or assertion of a slave, against a party, for or against whom, not even his testimony upon oath, in the most solemn form and manner known to the law, would or could have been received, would be to undermine the statute, to reject the substance and be cheated by the shadow. The prohibition in the statute, that no negro or mulatto shall be a witness, except in cases where negroes or mulattoes alone are concerned, is the exclusion of all testimony arising from such a source, inferior and subordinate, as well as direct and positive—the declarations of slaves cannot be admitted as evidence.

<div style="float:right">Slaves not competent witnesses except for or against negroes and mulattos, hence their declarations are never competent evidence against others</div>

Can it be said, with legal propriety, that Tumey, by the purchase and sale of slave Sam, had made himself party, or privy, and consented by implication to the declarations of Sam, during the ownership of his former master M'Ginnis, or his future master Knox? Did this act of purchase and sale emancipate his mind, purify his morals, elevate his character and condition, and repeal the law in relation to the evidence of slaves? The fact in issue, was the soundness, or unsoundness of negro Sam at the time of the sale by Tumey to Knox. Was Sam a witness in law capable to testify on oath, or declare not on oath, as to the truth of the fact in issue? The question in issue, was, the soundness or unsoundness of negro Sam, at the time of the sale and warranty of the 17th July, 1822, by Tumey to Knox. Suppose the sale had been made by an agent

TUMEY
vs.
KNOX.

of Tumey. Then declarations made by the agent at the time, might be given in evidence as part of the *res gestæ.* But the declarations of the agent made some two years before the sale, or some days after the sale, would not be evidence, they would not be any part of the *res gest.æ* Much less can the declarations of M'Ginnis and of Sam, some two years before, and of the negro Sam some days after, be a part of the *res gestæ,* as between Tumey and Knox. Neither M'Ginnis nor Sam, nor Doctor Fleece, were the agents of Tumey.

Judge Ows-
ley's opinion.

Judge Owsley, however, is of opinion, that the declarations in the bill of exceptions as stated, and considering the facts in issue, might be given in evidence upon the question, whether Sam had, or had not a continued disease from the time that M'Ginnis bled him, till he was attended by Doctor Fleece; that the question involved, at each period, is the nature and character of the disease under which Sam labored each time, and that his own declarations at those times, as to the afflictions and pains he felt are parts of the *res gestæ* at those times.

Judge Mills'
opinion.

Judge Mills is of opinion, that the declarations in question were not proper; but thinks the declaration of a slave may, in some cases, constitute a part of the *res gestæ,* and be proper to be given in evidence, and as the opinion of a physician or surgeon, may sometimes be given in evidence, whether the disease was of a temporary or chronic character, and that opinion is often based on his examination of his patient, combined with other circumstances, it might be competent for the physician to detail the reasons for his opinion combined with his examination. But is not willing to go further in admitting the declarations of either M'Ginnis or the slave made, to another who does not profess any medical skill, which is necessary to make his opinion competent.

The Chief Justice expresses his opinion for excluding the declaration of a slave in all cases.

Judgment of
the court.

These opinions of the judges, however, operating on the questions in this cause, produce a reversal.

It is, therefore, considered by the court, (Judge Owsley dissenting,) that the judgment of the circuit court be reversed, and that the cause be remanded for another trial, in which the declarations of M'Ginnis, and of the slave, to Durham, in the bill of exceptions alluded to, are to be excluded.

Plaintiff in this court to recover his costs.

*Robertson* and *Daviess*, for plaintiff; *Green*, for defendant.